

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| GREGORY AND AMY ERLANDSON, | CIV. 17 - 5046 |
| Plaintiffs, | |
| vs. | COMPLAINT |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

COMES NOW, Plaintiffs Gregory and Amy Erlandson, by and through their attorneys, and for their Complaint against the above-named Defendant American Family Mutual Insurance Company, state and allege as follows:

## NATURE OF THE ACTION

1.      This action seeks compensatory and punitive damages against American Family for breach of contract, bad faith, and vexatious refusal to pay amounts due and owing under an insurance policy.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiffs Gregory and Amy Erlandson (the "Erlandsons") are, and at all relevant times have been, residents of Rapid City, Pennington County, South Dakota.

3.      American Family Mutual Insurance Company ("American Family") is a company organized in a state other than South Dakota that maintains its principal place of business outside the State of South Dakota.

4.      This Court has jurisdiction under 28 U.S.C. §1332, based on complete diversity of citizenship.

1

5.      Damages at issue in this case exceed $75,000.00.

6.      This action is properly placed in the District Court of South Dakota, Western

Division, pursuant to 28 U.S.C. §1391.

## FACTS COMMON TO ALL COUNTS

7.      The Erlandsons purchased a homeowner's insurance policy ("the Policy") from

American Family that was in effect before June 2011 and up through December 28, 2013.

8.      The Policy covered the Erlandson's home located at 4211 Troon Court, Rapid

City, Pennington County, South Dakota, (the "Home") legally described as Lot Thirty Four (34)

in Block 3 of Redrock Meadows Subdivision, Pennington County, South Dakota

### A. 2011 Hail Storms

9.      On or about June 24, 2011, a hail storm severely damaged the Home.

10.     Approximately a month later, another hail storm damaged the Home.

11.     Hail damage is a covered loss under the insurance policy American Family sold to

the Erlandons.

12.     Various elements of the home were damaged, including gutters, downspouts,

metal fascia, windows, screens, the roof, and other metal trim on the roof.

13.     American Family paid for the replacement cost of these elements.

14.     The Erlandsons' roofing and siding contractor, after inspecting the Home,

concluded that the Home's exterior siding was damaged and in need of replacement due to the

damage caused by the hail storm.

15.     The Erlandsons provided American Family with photographic evidence

supporting this conclusion.

16.     American Family denied the claim for exterior siding replacement, despite having clear documentary evidence both as to the extent and nature of the damages.

17.     American Family had no reasonable basis to deny the claim for replacement of the damaged siding and its investigation of the claim was a sham investigation.

18.     American Family knew or recklessly disregarded the fact that payment of $15,384.46 was not sufficient to repair the damages to the Home, including $894.95 to pay for damages to its siding.

19.     American Family knew or should have known that its initial investigation was biased in its own favor and either ignored or recklessly disregarded available evidence.

20.     American Family has a practice of artificially limiting its payments to insureds by, among other things, failing to undertake a reasonable investigation and identifying an intentionally or recklessly low estimate of benefits owed to its insured under its policies.

21.     Had American Family undertaken a reasonable investigation or evaluated the evidence made available to it in an objective manner, it would have known that payment of $15,384.46 was not sufficient to repair the damage to the Home, including $894.95 to pay for the damage to its siding.

**B.  Appeal from Initial Denial**

22.     The Erlandsons disputed American Family's determination as to the extent of the benefits they were owed by it and timely appealed.

23.     In the fall of 2012 American Family hired its own engineering firm to undertake an assessment and draft a report.

24.     American Family contacted the Erlandsons in the fall of 2012, more than a year after the hail storms had damaged the Home, and indicated that, based upon the engineering

report it had solicited, it would reverse its decision and would pay to replace the damaged siding on the Home.

25.     Sometime thereafter, American Family contacted Gregory Erlandson and claimed that it had misinterpreted its own engineer's report when it informed him that it would replace the siding of the Home.

26.     American Family offered only to pay $323.12 for touch up painting of the home, thereby retracting its offer to pay for replacement siding.

27.     American Family's offer of $323.12 was not a reasonable amount to be paid to fix the remaining damage to the Home caused by the hail storm.

28.     American Family's determination to ignore its earlier reversal and ignore the evidence on which it was predicated was unreasonable and without support in objective evidence.

29.     American Family's decision to retract its offer to pay for replacement siding, and instead offer a supplement payment of $323.12, was unreasonable and based on its biased self-interest.

30.     By retracting its offer and ignoring the available evidence, American Family continued its practice of limiting payments to its insureds by, among other things, failing to undertake a reasonable investigation and identifying an intentionally or recklessly low estimate of benefits owed to its insured under its policies

31.     American Family had previously approved the replacement of exterior siding of a neighbor's home that was immediately adjacent to the Home, approximately 30" away, where the damage to the neighbor's siding had been caused by the same 2011 storm that had damaged the Home, as extensively documented by the Erlandsons' contractor.

4

32.     American Family's refusal to undertake a reasonable investigation and to offer benefits sufficient to repair the damage to the siding caused additional damage to the Erlandsons' siding and decreased the value of their home.

33.     American Family has continued to refuse to pay the full amount owed under the policy – the amount needed to properly fix damage to the Home, including the damaged siding – despite clear evidence demonstrating that such repairs were covered and the money needed to undertake them was due and owing under the policy.

**C.  May 2013 Hail Storm**

34.     On or about May 18, 2013, another hail storm severely damaged the Home.

35.     The roof, deck, and gutters were all severely damaged.

36.     The siding of the home, once again, suffered even more severe damage.

37.     American Family approved of and paid for claims to replace the roof, downspouts, and gutter that were damaged by the May 2013.

38.     After being notified of the additional damage to the siding, however, American Family once again refused to pay for the replacement of the severely damaged siding.

39.     Instead, American Family offered $548.89 to provide repair in the form of "touch up" painting to the severely damaged siding.

40.     On or about August 29, 2013, the Erlandsons' contractor, Steve Eakins of Iron Clad Exteriors, contacted American Family to share his findings and explain the significant damage to the house's siding that had been uncovered.

41.     Eakins attempted to explain what he had found, but the American Family representative cut him off and stated, "I am not talking to you about siding."

5

42.     Eakins continued to explain the cumulative effect of the storms on the siding and to outline the nature and extent of the damage to home's exterior.

43.     In response, the American Family representative informed Eakins that the Company had decided to deny siding claims by its insureds, that the decision had come from people above him, and that he – the representative – did not want to step on anyone's toes.

44.     Eakins offered to send the representative photographic evidence of the damage and stated that he had over 40 photographs of the damage done to the siding that were taken from all sides of the house.

45.     In direct abrogation of American Family's duty to investigate, the representative of American Family indicated that the company had already paid for too many siding jobs, that he did not want to review the photographic evidence of the damage, that he would not investigate the claim any further, and that there was nothing to be done to change American Family's position.

46.     American Family intentionally and recklessly denied the claim for exterior siding replacement arising from the May 2013 storm.

47.     American Family had no reasonable basis to deny the claim for replacement of the damaged siding and its investigation of the claim was a sham investigation.

48.     American Family cannot eliminate, ignore, or lessen its duties of good faith and fair dealing by delegating them to an agent.

49.     American Family knew or recklessly disregarded the fact that the benefits it offered was not sufficient to repair the damages to the Home, including damages to its siding.

50.     American Family intentionally and recklessly refused to review evidence that was provided to it and that it had a duty to investigate in the course of considering the claim.

6

51.     American Family's investigation was a sham and was based not on available evidence, but on a predetermined result that was biased, self-interested, and directly opposed to its duties to its insured.

52.     American Family knew or should have known that its initial investigation was biased in its own favor and either ignored or recklessly disregarded available evidence.

53.     American Family has a practice of artificially limiting its payments to insureds by, among other things, failing to undertake a reasonable investigation and identifying an intentionally or recklessly low estimate of benefits owed to its insured under its policies.

54.     Had American Family undertaken a reasonable investigation of the damage that resulted from the May 2013 or evaluated the evidence made available to it in an objective manner, it would have known that payment offered to cover "touch up" painting was not sufficient to repair the damage to the Erlandsons' home, including the damage to its siding.

55.     American Family's claims handling process, as described in the preceding paragraphs, is intentionally designed to deny paying the Erlandsons the full amount owed under its insurance policy.

56.     American Family's claims handling process is deliberately intended to delay and deny valid claims and otherwise to avoid paying what should be paid in order to address them properly and in accordance with American Family's duties under its policies.

7

**D. American Family Retaliates against the Erlandsons when they Contest its Pattern of Unfair Treatment**

57.     On October 24, 2013, Gregory Erlandson wrote to his American Family agent and shared with him the substance of the communication that his contractor, Mr. Eakins, had with the American Family representative.

58.     American Family did not respond to this letter, nor did it make any attempt to address his concerns or the underlying problem with his home's siding.

59.     Instead, American Family wrote the Erlandsons and informed them that, after accepting their premiums for almost 20 years, it was dropping them as a customer, effective December 28, 2013.

60.     Rather than consider information establishing that the "touch up" paint job offered was insufficient and inappropriate in view of the extensive damage to the siding of the Erlandsons' home, American Family terminated the Erlandsons' policy.

61.     American Family has engaged in a pattern and practice of denying and delaying payment of the full amount of benefits owed to insureds under its policies.

62.     American Family had a duty to perform a reasonable investigation of the May 2013 storm and of the claims that Erlandsons made arising from that storm.

63.     Part of the premiums that the Erlandsons and other insureds pay is intended to cover the expenses that American Family incurs to investigate claims property.

64.     American Family is required to investigate claims properly, i.e., in a reasonable fashion.

65.     A reasonable investigation requires that an insurer look for reasons to pay, not just for reasons why it may avoid paying on a claim.

66.     In originally evaluating the Erlandsons' claim arising from the May 2013 storm, American Family had a duty to give their interests just as much consideration as its own interests.

67.     American Family intentionally and recklessly breaches this duty of due consideration.

68.     American Family continued to fail to undertake a reasonable investigation and continued to fail to give the Erlandsons due consideration when it refused to review additional evidence that substantiated their claim.

69.     On November 19, 2013, Gregory once again wrote to American Family and requested that American Family reconsider its position in light of the evidence that it had refused to consider.

70.     American Family again refused to honor its obligations under the contract and again refused to live up to the duties owed to its insureds under South Dakota law.

71.     American Family has a pattern and practice of ignoring its duties to its insureds, undertaking result-oriented investigations that either ignore or diminish weighty evidence demonstrating that its insureds have experienced property damage covered under their policies, and refusing to re-examine evidence that calls into question or directly refutes the biased conclusions as to the scope or nature of benefits owed under such policies.

72.     American Family has a pattern and practice of conducting investigations of claims with a clear intent on finding reasons to deny or delay benefits that are duly owed and substantiated by evidence furnished by the insureds.

73.     As a direct and proximate result of American Family's claims handling process, as described in this Complaint, the Erlandsons have suffered compensable damages, including but not limited to the following:

a.  The Erlandsons have been deprived of the benefits of the contract and the benefits of having their Home fixed based on the then-current cost of materials and labor;

b.  The Home has sustained additional damage as a result of American Family's sham investigation and refusal to sign off on the necessary remedy;

c.  The Erlandsons have experienced increased expense, aggravation, fear, annoyance, distress, and inconvenience due to the wrongful delay and denial of the claim and time incurred trying to compel American Family to honor the duties it owes under the contract and under the law; and

d.  The Erlandsons have been forced to retain a lawyer.

## COUNT I:  BREACH OF CONTRACT

74.     Plaintiff re-alleges and incorporates by reference each preceding paragraph, as if fully set forth herein.

75.     The contract of insurance that the Erlandsons procured from American Family was valid, enforceable, and timely paid for by the Erlandsons.

76.     American Family breached the obligation owed to the Erlandsons under the contract of insurance by failing to pay the full amount of benefits owed under the policy in a timely fashion.

## COUNT II:  BAD FAITH

77.     Plaintiff re-alleges and incorporates by reference each preceding paragraph, as if fully set forth herein.

78.     American Family intentionally and recklessly employs a claims handling process that deliberately aims at maximizing its profits and producing an unjustified windfall, all at the expense of its insureds.

79.     American Family intentionally and recklessly employs a claims handling process that is intended to delay payment of benefits owed under the terms of its insurance policy.

80.     American Family intentionally and recklessly employs a claims handling process that is intended to deny the full payment of benefits owed under the terms of its insurance policy.

81.     American Family's conduct constitutes actionable bad faith and has caused the Erlandons damage in an amount to be proven at trial.

## COUNT III:  PUNITIVE DAMAGES

82.     Plaintiff re-alleges and incorporates by reference each preceding paragraph, as if fully set forth herein.

83.     American Family's actions, including its claims-handling process, were undertaken with oppression, fraud, and malice.

84.     An award of punitive damages, in an amount to be determined at trial, are necessary and appropriate under the circumstances to punish and deter such conduct.

## COUNT IV:  VEXATIOUS REFUSAL TO PAY

85.     Plaintiff re-alleges and incorporates by reference each preceding paragraph, as if fully set forth herein.

86.     American Family unreasonably and vexatiously refused to pay amounts due and owing under the policy, and the Erlandsons are entitled to recover reasonable attorneys' fees under SDCL § 58-12-3.

11

WHEREFORE, Plaintiffs respectfully prays for relief as follows:

1. Entry of money judgment in their favor, awarding compensatory and punitive
   damages to Plaintiffs, together with applicable prejudgment interest;

2. An award of Plaintiffs' reasonable attorneys' fees and costs permitted by law;

3. Grant such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial on all issues and facts so triable.


Dated at Sioux Falls, South Dakota, this 26th day of May, 2017.

CADWELL SANFORD DEIBERT & GARRY LLP

By_____
     Alex M. Hagen
     PO Box 2498
     Sioux Falls SD 57101-2498
     Telephone: (605) 336-0828
     Telecopier: (605) 336-6036
     ahagen@cadlaw.com
     Attorney for Plaintiffs